**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000475
21-JUN-2024
10:09 AM
Dkt. 76 SO**

NO. CAAP-23-0000475

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


G.W., Petitioner-Appellee, v.
D.C., Respondent-Appellant,
and
CHILD SUPPORT ENFORCEMENT AGENCY,
STATE OF HAWAIʻI, Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1PP201006366)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and McCullen, JJ.)

        This appeal arises out of a paternity petition and related custody dispute between Petitioner-Appellee G.W. (**Father**) and Respondent-Appellant D.C. (**Mother**).  Mother appeals from the following orders entered by the Family Court of the First Circuit (**Family Court**):[1]  (1) the May 1, 2023 "Decision and Order Following Trial" (**Decision**); and (2) the July 11, 2023 "Order Granting in Part and Denying in Part [Mother's] Motion for Reconsideration, Alteration or Amendment of the Decision . . ., Filed May 1, 2023 Filed 05/11/23" (**Reconsideration Order**).  The Decision, among other things, awarded Mother and Father joint legal and physical custody of their minor child (**Child**) and determined Father's child support obligation.

        On appeal, Mother presents nine points of error, which fall generally into three categories.  First, Mother contends that the Family Court erred by modifying a physical custody

_____

[1]      The Honorable Lesley N. Maloian presided.

timesharing agreement between Mother and Father:  (1) "even though that issue was never before the court at trial"; (2) in violation of the law of the case doctrine; and (3) in violation of Mother's right to procedural due process.  Second, Mother contends that the Family Court erred in determining Father's child support obligation by:  (4) "limiting the child support . . . to only the period of after May 1, 2023"; (5) "denying child support . . . from the [C]hild's date of birth to the date of the Petition"; and (6) "denying child support . . . from June 1, 2022 to May 1, 2023."  Third, Mother contends that the Family Court erred by:  (7) "ordering Mother to pay half of mediation costs without having the statutory authority to do so" and without finding that she was financially able to comply.  Mother's eighth and ninth points of error challenge certain aspects of the Family Court's October 19, 2023 Findings of Fact and Conclusions of Law (**FOFs/COLs**) that are related to her first seven points of error.[2]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Mother's contentions as follows.

## I.  Background

On December 21, 2020, Father filed a Petition For Paternity or For Custody, Visitation and Support Orders After Voluntary Establishment of Paternity (**Petition**).  Father sought, among other things, joint legal and physical custody of Child and the determination of child support.  On February 4, 2021, Mother filed her answer to the Petition.  Mother sought, among other things, sole legal and physical custody of Child with reasonable visitation by Father, and the determination of child support.

On July 19, 2021, the Family Court entered a Stipulated Judgment of Paternity Order Regarding Custody, Visitation, and Support after Voluntary Establishment of Paternity.  Father was ordered to continue providing employer-based medical and dental

---

[2]    Specifically, Mother contends that FOFs IBi22, IBii26, 30, 34, 43, 46, 47, IBiii69, 73, 83 and IBiv119, and COLS IIiii134, 140, 141, 143, 150, IIiiv183, 186, 203, 205, 207, 212, 216, 223 and 229, "were made in error."

health insurance coverage for Child.  All other issues raised in the Petition were reserved for further hearing/trial.

Pre-trial motions included Mother's September 16, 2021 motion to continue trial and for past support and other relief. Mother requested, among other things, that the Family Court order Father to pay "back child support" for the period from the birth of Child to the present.

At a March 17, 2022 hearing, Father's attorney placed on the record the parties' agreement regarding physical custody and timesharing.  The parties agreed to the following:  (1) shared (*i.e.*, joint physical) custody of Child; (2) Father was to enroll in and complete the SCOPES Parenting Course; and (3) upon completion of the SCOPES parenting course or in June 2022, whichever occurred later, Father was to have three "overnights," alternating each week from Friday to Monday with drop-off at school on Monday, and then Wednesday through Saturday with drop-off at 9:00 a.m. on Saturday.  It does not appear that this agreement, though placed on the record, was ever reduced to a stipulated order.

On May 5, 2022, PreTrial Order No. 2 was filed. PreTrial Order No. 2 identified the issues in dispute for trial as:  "1.) Legal Custody; 2.) The parties' Income and Expenses; 3.) Child Support; 4.) Dependency Tax Exemption; 5.) Child Health Care; 6.) Maintenance Of Insurance; 7.) Payment Of Excess Expenses; and 8.) Tax Credit."  Physical Custody and timesharing were not identified as disputed issues for trial.

Trial began on May 24, 2022.  At that time, the Family Court stated that the issues to be tried were "[p]ast child support, current child support, the child tax credit, custody, only legal, and who should, in fact, be providing medical and dental for the child."  (Emphasis added.)  Regarding timesharing, Father's counsel raised the issue of "major holidays" and "summer break," which the court reserved for consideration.  Later that day, the court indicated that Mother should be prepared to address "major holidays and breaks" during a June trial date, and gave the parties additional time to "exchange any exhibits that are going to assist this Court in deciding the issue of major

3

holidays and breaks . . . ."

The trial concluded after six days, ending on February 7, 2023.

On May 1, 2023, the Family Court issued its Decision. As to timesharing, the court modified the parties' March 17, 2022 agreement, ordering the following "Regular Timesharing" schedule to apply after May 1, 2023:

> The parties shall have visitation with the minor child on a two-week alternating schedule:
>
> Week 1.     [Father] shall have Weekend Visitation with the minor child every other Friday after school to Monday drop off at school.
>
> Week 2.     [Father] shall also have visitation with the minor child every other Wednesday after school to Sunday at 9:00 A.M.
>
> The Regular Timesharing is illustrated by the following model:

| Weeks | Sun | Mon | Tues | Wed | Thurs | Fri | Sat |
|-------|-----|-----|------|-----|-------|-----|-----|
| Week 1 | Mother | Mother | Mother | Mother | Mother | Father | Father |
| Week 2 | Father | Mother | Mother | Father | Father | Father | Father |
| Week 3 | Mother | Mother | Mother | Mother | Mother | Father | Father |
| Week 4 | Father | Mother | Mother | Father | Father | Father | Father |

As to child support, the court determined Father's child support obligation commencing May 1, 2023. The court denied Mother's request for past child support, pursuant to Hawaii Revised Statutes (**HRS**) § 584-15(d).

On May 11, 2023, Mother filed a motion for reconsideration of the Decision. On July 11, 2023, the Family Court denied the motion, except as to Mother's request that child support continue until Child reaches age 23, as provided in the Reconsideration Order.

## II. Discussion

### A. Modification of Custodial Timesharing Agreement

In her first three points of error, Mother challenges the Family Court's modification of the parties' March 17, 2022 timesharing agreement. Mother argues that the Family Court "ignored the stipulated time-sharing agreement of the parties,

4

disregarded the issues set for trial in Pre-Trial Orders, ignored the restrictions of [Hawaiʻi Family Court Rules (**HFCR**)] Rule 16 and did so to the detriment of . . . Mother's right to procedural due process and in violation of the law of the case." Mother asserts that, as a result, Father now has every Friday and Saturday evening with Child, such that Mother and Child's half-brother on Mother's side are not allowed to spend any weekend time with Child, except for one Sunday every two weeks. Mother argues that because the parties' timesharing agreement was not an issue for trial, she did not have an opportunity to show that the new schedule is not in Child's best interest.

Parents have a substantive liberty interest in the care and custody of their children protected by the due process clause of article 1, section 5 of the Hawaiʻi Constitution. In re Doe, 99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002). Relatedly, parental rights cannot be denied without notice and an opportunity to be heard at a meaningful time and in a meaningful manner. See In re JH, 152 Hawaiʻi 373, 380-81, 526 P.3d 350, 357-58 (2023) (quoting In re Doe, 99 Hawaiʻi at 533, 57 P.3d at 458)); see also Doe v. Doe, 120 Hawaiʻi 149, 169, 202 P.3d 610, 630 (App. 2009) ("[U]nder the Hawaiʻi Constitution, absent express findings of exigent or emergency circumstances, due process requires that a parent be given notice and an opportunity to be heard prior to a change in primary physical or legal custody in family court custody matters. . . ."); S.G. v. B.A., No. CAAP-22-0000722, 2024 WL 1697560, at *2 (Haw. App. Apr. 19, 2024) (ruling that the family court erred in awarding sole legal custody to father without adequate notice to mother that her legal custody could be terminated). Further, "[p]rocedural due process requires that an individual whose rights are at stake understand the nature of the proceedings he or she faces." In re Doe, 99 Hawaiʻi at 533, 57 P.3d at 458.

Here, neither Mother nor Father sought to modify the regular timesharing schedule that was part of their March 17, 2022 agreement – before or during trial. The Family Court, in turn, did not identify their agreed upon schedule, or physical custody more generally, as a disputed issue for trial. The court

5

indicated only that Mother should be prepared to address "major holidays and breaks." In his answering brief, Father argues that the parties' timesharing agreement was never reduced to a stipulated order, and the Family Court was not bound by it, but he acknowledges that the court "apparently *sua sponte*, chose not to order the six/eight split" that was part of the parties' agreement. Indeed, the Family Court itself acknowledged in COL 134 that "the issue of modification of the visitation schedule was not decidedly before the court . . . ."[3]

On this record, we conclude that the Family Court erred in modifying the regular timesharing schedule that was part of the parties' March 17, 2022 custodial timesharing agreement without adequate notice to Mother that her related custodial interests could be materially affected (and changed), and we cannot conclude that the error was harmless. Accordingly, we vacate the Decision as to regular time sharing and remand the case for a new hearing or trial on this issue.[4]

**B. Child Support**

### 1. Child Support Commencing May 1, 2023

Mother appears to challenge the Family Court's calculation of Father's monthly child support obligation commencing May 1, 2023.

The Family Court determined Father's child support obligation commencing May 1, 2023, pursuant to HRS § 576D-7 and the Child Support Guidelines Worksheet (**Guidelines**). Under the Guidelines, Father was credited with the Equal Time-Sharing Calculation on the Extensive Time-Sharing Worksheet, based on the court's Regular Time-Sharing Schedule, which provided for equal timesharing. Because we are vacating the Decision as to regular time sharing, including the Regular Time-Sharing Schedule, we

---

[3] In COLs 134 and 135, the court further states that the parties purposely elicited testimony regarding, and voluntarily chose to litigate, the issue of Father's regular visitation schedule. Although there was limited testimony regarding the parties' agreement, the record does not support the overly broad findings made in COLs 134 and 135.

[4] Given our ruling, we need not reach Mother's other contentions regarding the Family Court's modification of the timesharing agreement.

also vacate the Family Court's calculation of Father's monthly child support obligation commencing May 1, 2023. On remand, Father's monthly child support obligation must be recalculated based on any new regular time sharing schedule ordered by the Family Court.[5/]

### 2. Past Child Support

Mother challenges the Family Court's decision to deny Mother's request for past child support, *i.e.*, from the date of Child's birth to May 1, 2023. In response, Father, joined by Respondent-Appellee Child Support Enforcement Agency, argues that the court did not err or abuse its discretion in limiting past child support pursuant to HRS § 584-15(d) (2018).

HRS § 584-15(d) states in relevant part: "Support judgment or orders ordinarily shall be for periodic payments which may vary in amount. . . . The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just." We review the family court's application of HRS § 584-15(d) for abuse of discretion. See Child Support Enf't Agency v. Doe (CSEA v. Doe), 98 Hawaiʻi 58, 64-65, 41 P.3d 720, 726-27 (App. 2001).

In limiting Father's liability for past support, the Family Court found: "In November of 2012, [Father] paid [Mother] monthly support which increased over time to the current amount of $700 per month." The Family Court also made the following FOFs, among others, none of which Mother contests:[6/]

> 188. From November 2012, Mother failed to inform Father of the amount of monthly expenses she incurred for the child.
>
> . . . .
>
> 190. From November 2012, Mother never objected to the amount of financial support Father paid for the support and care of the minor child.

---

[5/] Given our ruling, we need not reach Mother's other contentions regarding the calculation of Father's monthly child support obligation commencing May 1, 2023.

[6/] Unchallenged findings of fact are binding on appeal. In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

191.  Father testified [i]n November of 2012, he asked Mother how much he should pay for her expenses.  Mother replied, "Whatever you think."  Mother offered no evidence to refute Father's testimony.

.  .  .  .

194.  Father consistently made monthly financial payments for the support and care of the minor child from November 2012 up to the date trial commenced.

195.  Father voluntarily increased the amount of financial support he paid to Mother in accordance with any raises or promotions he received.

196.  Mother willingly accepted financial payments made by Father from November 2012 up to and including the date trial commenced.

.  .  .  .

201.  It was clear from the evidence Mother failed to inform Father the amount of support he paid her was insufficient to cover all of the minor child's monthly expenses.

202.  It is also clear from the record, Mother didn't wish to discuss finances with father.

.  .  .  .

213.  Mother willingly accepted ten (10) years of financial support from Father without objection or utterance that the amount he paid was insufficient to cover all the child's expenses.

(Letter cases altered.)

On this record, we cannot say that the Family Court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice," CSEA v. Doe, 98 Hawaiʻi at 65, 41 P.3d at 727, in determining that "it is unreasonable and wholly unjust for Mother to now assert her entitlement to reimbursement for expenses and past child support."  (Letter cases altered.) Accordingly, the Family Court did not abuse its discretion in limiting past child support pursuant to HRS § 584-15(d).

## C.  Mandatory Private Mediation

Mother contends that the Family Court erred by ordering the parties to mediate any future disputes about "[m]ajor decisions" regarding Child, and requiring her to pay one-half of a private mediator's fee, while specifically excluding mediation at the Mediation Center of the Pacific.  Mother argues that this order is "punitive" and curtails her access to justice, "because

she does not have the financial ability to pay for private mediation." Father agrees that "the court erred by ordering the parties to mediate any future disputes prior to filing a motion."

The Decision sets out a procedure for addressing "[m]ajor decisions" regarding Child. The contested provision states:

> If after engaging in good faith discussions, the parties are unable to reach a decision, the parties shall engage in private mediation with a mutually agreed-upon mediator. The parties shall discuss the issue in mediation until a decision is reached. Each party shall pay one-half (1/2) of the mediator's fees. Mediation at the Mediation Center Of The Pacific shall not satisfy this requirement. The parties shall not file any motions with the Family Court unless the private mediator has declared an impasse. If a party refuses to engage in mediation or files a motion with the Family Court without first having attended mediation, sanctions or fines may be imposed upon that party.

Mother contends that the Family Court lacked the statutory authority to impose this requirement and failed to make any finding that Mother had the financial ability to pay for private mediation.

HFCR Rule 53.1 provides, in relevant part:

> **(a) Authority to order.** The court, sua sponte or upon motion by a party, may, in exercise of its discretion, order the parties to participate in a nonbinding Alternative Dispute Resolution process (ADR or ADR process) subject to terms and conditions imposed by the court. ADR includes mediation or other such process the court determines may be helpful in encouraging an economic and fair resolution of all or any part of the disputes presented in the matter.

The Family Court's power to order parties to mediate is not unbounded. See Kaufman v. Kaufman, No. CAAP-15-0000601, 2016 WL 7468057, at *1 (Haw. App. Dec. 28, 2016) ("Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." (quoting Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006))).

The plain language of HFCR Rule 53.1 authorizes the family court to order the parties to participate in an ADR process, including mediation, that may be helpful in resolving "all or any part of the disputes presented in the matter." (Emphasis added.) The Family Court did not cite any authority,

9

and we have found none, that authorizes the court to order parties to a paternity case such as this to participate in private mediation regarding unknown future disputes about the subject child. Moreover, the court's FOFs/COLs do not reflect consideration of any of the factors identified in HFCR Rule 53.1(b) as relevant to the decision to order a case to ADR. On this record, we conclude that the Family Court abused its discretion by requiring private mediation as a precondition to seeking future judicial relief regarding unknown future disputes about Child.

### III. Conclusion

For the reasons discussed above, the May 1, 2023 Decision and Order Following Trial, entered by the Family Court of the First Circuit, is vacated as to regular time sharing, Father's monthly child support obligation commencing May 1, 2023, and mandatory private mediation, and affirmed in all other respects. The case is remanded to the Family Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, June 21, 2024.

On the briefs:                          /s/ Kathering G. Leonard
                                        Acting Chief Judge
Michael A. Glenn
for Respondent-Appellant.               /s/ Clyde J. Wadsworth
                                        Associate Judge
Thomas D. Farrell
for Petitioner-Appellee.                /s/ Sonja M.P. McCullen
                                        Associate Judge